62982, 62983. TALLMAN v. TALLMAN (two cases).

CARLEY, Judge.

Appellant-cross-appellee is the ex-wife of appellee-cross-appellant. They appeal from a final order of the trial court domesticating, as subsequently modified, a Pennsylvania divorce decree incorporating therein the parties' property settlement agreement and finding appellee indebted to appellant thereunder in a certain amount. Appellee has moved to dismiss the main appeal, arguing that it seeks appellate review of a "domestic relations action" and that appellant failed to follow the discretionary appeal procedure of Code Ann. § 6-701.1. See *Martinez v. Martinez,* 245 Ga. 211 (264 SE2d 231) (1980). In the alternative, appellee has moved to transfer both appeals to the Supreme Court because, in addition to domestication, appellant sought an attachment for contempt. See *Parker v. Parker,* 233 Ga. 434 (211 SE2d 729) (1975). These arguments are meritless. " '[T]he suit to enforce a decree for alimony of a sister state does not make such a suit an alimony case; rather it is an action on a debt of record.' [Cit.] Inasmuch as any 'contempt' feature has been eliminated from this case and the judgment is essentially a finding that the defendant [appellee] is indebted in a certain amount, we have considered this case and not transferred it. [Cits.]" *Guest v. Guest,* 146 Ga. App. 512 (246 SE2d 503) (1978). Accordingly, appellee's motion to dismiss the main appeal and his alternative motion to transfer both appeals to the Supreme Court are denied.

Because the cross-appeal raises issues fundamental to the underlying domestication of the Pennsylvania decree, that appeal will be considered first.

### Case Number 62983

1. Cross-appellant asserts that the monthly payments awarded to cross-appellee under the Pennsylvania divorce decree would not be considered "alimony" under the law of that state and that his obligation for those payments could not be enforced in Pennsylvania by contempt. Therefore, cross-appellant contends that the trial court erred in the instant case in entertaining the domestication action because the proper procedure would have been for cross-appellee to reduce her claim under the Pennsylvania divorce decree to judgment in that state and then seek domestication of that money judgment rather than seeking domestication of the divorce decree itself and its enforcement by contempt. See generally *Parker v. Parker,* 233 Ga. 434, supra; *Baker v. Baker,* 243 Ga. 689 (256 SE2d 370) (1979).

We find these arguments unpersuasive. Pretermitting whether the monthly payments awarded to cross-appellee by the Pennsylvania

court would be denominated as "alimony" under the laws of that state, the simple fact remains that they are "support" payments awarded in a Pennsylvania decree dissolving the marriage and it is that judicial decree which presumably *already* establishes cross-appellant's monthly monetary obligation to cross-appellee for which domestication in this state was sought. "Full Faith and Credit shall be given in each State to the ... Judicial Proceedings of every other State." Code Ann. § 1-401. This clause "requires the courts of this state to give effect to a divorce decree of a sister state when properly proved. [Cit.]" *Benefield v. Harris,* 143 Ga. App. 709 (240 SE2d 119) (1977). Under these circumstances, we are of the opinion that the sole question concerning the propriety of the trial court's ultimate decision to domesticate the Pennsylvania divorce decree in this state is whether the award of monthly payments to cross-appellee under that decree is sufficiently "final" under the laws of Pennsylvania so as to be entitled to full faith and credit in Georgia. See *Buck v. Buck,* 151 Ga. App. 353 (259 SE2d 736) (1979). Cross-appellant does not assert or attempt to demonstrate that the order requiring the monthly payments to cross-appellee is not the Pennsylvania court's "final" award under that state's laws. Following the presumption that the law of Pennsylvania is the same as that of this state, it appears that the Pennsylvania divorce decree, incorporating therein the parties' property settlement agreement made in contemplation and consideration of the divorce, was in every sense of the word the "final" non-discretionary judgment of that court on cross-appellant's monthly financial obligation to cross-appellee. See generally *Ivey v. Ivey,* 234 Ga. 532 (216 SE2d 827) (1975). And, as discussed above, any question of whether cross-appellant's obligation under the Pennsylvania divorce decree, if given full faith and credit in Georgia, could be enforced by contempt, is "moot" in this case since the trial court's final judgment is essentially a finding that cross-appellant is indebted to cross-appellee under the domesticated Pennsylvania decree. Accordingly, we find no error in the domestication of the Pennsylvania divorce decree in this state for any reason asserted in the cross-appeal.

2. Cross-appellant asserts that the trial court erred in finding that cross-appellee was in compliance with the Pennsylvania decree concerning visitation rights as of September 1978 and thus, under the terms of the decree, entitled to a recovery of arrearages in the monthly payments as of that date. The trial court found, in essence, that cross-appellee's actions were in substantial compliance with the Pennsylvania decree relative to cross-appellant's visitation rights after September 1978. Our review of the record does not demonstrate that this finding was "clearly erroneous." See *Farmer v. Farmer,* 147

Ga. App. 387 (249 SE2d 106) (1978). Accordingly, the trial court's conclusion of law that cross-appellee was entitled to arrearages under the terms of the parties' agreement providing for a cessation of certain payments to cross-appellee in the event she would *not* allow the exercise of the mandated visitation rights, was not erroneous. See Code Ann. § 20-1101.

3. Cross-appellant enumerates as error the finding that he is responsible for the education expenses of his daughter while attending Georgia Institute of Technology under the following terms of the divorce decree: "In the event that any of the children of the parties desire[s] to attend college or other comparable educational facility, *which facility and the cost thereof must be agreed to by husband,* husband agrees to pay up to Six Thousand ($6,000.00) Dollars per year for said education for a maximum four-year term; said Six Thousand ($6,000.00) Dollars per year includes tuition, books, fees, room and board, clothing, travel to and from home and college." (Emphasis supplied) While it is apparently true that cross-appellant's daughter entered Georgia Tech without securing her father's *prior* approval of either that facility or its cost, it is likewise clear that, after being informed that his daughter was enrolled, cross-appellant, in his own words, "did agree to pay for her tuition, books and other expenses [at Georgia Tech.]" Obviously, as found by the trial court, this evidence demonstrates that cross-appellant is financially obligated under the terms of the agreement quoted above for the educational expenses of his daughter. Cross-appellant's subsequent ratification of his daughter's actions by his agreement to pay for her tuition, books and other expenses at Georgia Tech evidences his "agreement" as to the facility, Georgia Tech, and the cost thereof. Accordingly, the trial court did not err in finding that cross-appellant was liable for these expenses. See generally *Griggs v. Dodson,* 223 Ga. 164 (2) (154 SE2d 252) (1967).

### Case Number 62982

4. Appellant contends that the trial court erred in domesticating, in addition to the original divorce decree, two Pennsylvania orders entered subsequent thereto. It is essentially appellant's sole position that the two orders were entered by the Pennsylvania court at a time when she was not a resident of that state and that the Pennsylvania court thus lacked jurisdiction over her. The two orders were entered in contempt actions seeking to enforce appellee's visitation rights. In one, it appears that appellant made an appearance and entered into a "stipulation" relative to appellee's visitation rights. In the other, appellant made no appearance even after "having been duly served . . ." Under the authority of *Haire v.*

*Eide,* 150 Ga. App. 52 (256 SE2d 658) (1979), we find meritless appellant's assertion that these two orders should not be afforded full faith and credit in this state.

*Judgment in Case No. 62982 affirmed. Judgment in Case No. 62983 affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED FEBRUARY 12, 1982 —
REHEARING DENIED MARCH 2, 1982 —

Lee Ann Tallman, *pro se.*
Emily S. Bair, for appellee.